CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 15 2006

JOHN F CORCORAN, CLERK
BY:        K Dotson
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| MELISSA F. HILL,                          ) | Civil Action No. 5:05cv00077 |
| )                                         | |
| *Plaintiff*                        )      | **REPORT AND** |
| v.                                        )    | **RECOMMENDATION** |
| )                                         | |
| JO ANNE B. BARNHART,               )      | By:   Hon. James G. Welsh |
| Commissioner of Social Security    )      |        United States Magistrate Judge |
| )                                         | |
| *Defendant*                        )      | |

The plaintiff, Melissa F. Hill, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

By order of referral entered March 8, 2006, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On the same date, the Commissioner filed her Answer and a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. In accordance with the court's Standing Order No. 2005-2,[1] the plaintiff, by counsel, timely

---

[1] Pursuant to paragraph 1 of the court's Standing Order No. 2005-2, the plaintiff in Social Security must file, within thirty a days after service of the administrative record, "a brief addressing why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded."

filed her summary Judgment motion and supporting memorandum addressing the reasons why she believes the final decision of the Commissioner is not supported by substantial evidence. No written request having been made for oral argument,[2] and the Commissioner having now filed her brief in response and motion for summary judgment and the undersigned having reviewed the administrative record, the following report and recommended disposition are submitted.

The plaintiff's contention, at its core, is that the medical evidence and her testimony constitute substantial evidence of her disability[3] due to degenerative disc disease and associated chronic low back and radicular pain. (*See* R. 151). Disputing the administrative finding that she retains the exertional ability to perform a significant number of jobs in the national economy, the plaintiff argues that the Commissioner's decision is based on an erroneous discounting of her testimony, on a failure to consider adequately medical evidence documenting her significant disc disease and debilitating back pain, and on vocational testimony given in response to a hypothetical question that failed to include all of her functional limitations.

## I.    Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by the Act and applicable administrative regulations. If such substantial evidence exists,

---

[2] Paragraph 2 of the court's Standing Order No. 2005-2 direct that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

[3] As defined in the Social Security Act, "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard. " *Mastro v. Apfel*, 270 F3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642). "In reviewing for substantial evidence, [the court should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (quoting *Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.     Administrative History

The record shows that plaintiff filed her current application for DIB on or about October 6, 2000,[4] alleging a disability onset date of July 5, 1997,[5] when she was twenty-eight years of age.

---

[4] Plaintiff's protected filing date in connection with this application is August 31, 2000. (R.135).

[5] The plaintiff in this case filed an earlier application for a period of disability insurance benefits on September 29, 1998, alleging the same July 5, 1997 disability onset date. (*See* R.35). Her earlier application was denied both initially and on reconsideration, and it was denied following a November 8, 1999 administrative hearing at which time the plaintiff appeared, testified on her own behalf, and was represented by counsel. (*Id.*). Her subsequent request for Appeals Council review was denied on April 24, 2002; no further appeal was sought, and the administrative decision of November 8, 1999 is final and binding as to the period then in issue. (*See* R.57). *See* 20 C.F.R. §§ 404.900, 404.957(c)(1); 404.987(a). *See also Califano v. Saunders*, 430 U.S. 99 (1977).

3

(R.135-138). Having met the insured status requirements of the Act only through December 31, 2002,[6] the plaintiff's evidence in this case must establish her disability no later than that date. (R.22,23,29). *See* 42 U.S.C. §§ 416(I), 423.

The plaintiff's current application was denied, both initially and on reconsideration. (R49-53,57,72-79). Pursuant to a timely hearing request (80-81,182-184), the first of two hearings was conducted by an administrative law judge ("ALJ") on August 28, 2002. (R.57-65.519-552). Appearing in person and by counsel, the plaintiff testified and presented the supporting testimony of her husband. (R.57). Her claim was subsequently denied by written decision, dated December 23, 2002, and she sought Appeals Council review alleging *inter alia* that the vocational evidence failed to support the non-disability determination. (R.67). This request for review was granted by the Appeals Council; the hearing decision was vacated, and the case was remanded with instructions. (R.67-68). Pursuant to the remand order, a second hearing was held on August 3, 2004. (R.21, 553-602). Once again, the plaintiff appeared in person and by counsel, testified, and presented her husband's testimony. (R.21,553-602). Also testifying was a vocational witness. (R.21,593-294,600-601). Incorporating by reference, to the extent applicable, the rationale underlying his earlier decision, the plaintiff's claim was again denied by written decision of the ALJ on September 24, 2004 (R.21-30). Appeals Council review was, thereafter, denied (R.11-14), and the most recent written decision of the ALJ now stands as the final decision of the Commissioner.

---

[6] To establish a period of disability within the meaning of 42 U.S.C. § 416(i) and to be entitled to disability insurance benefits under 42 U.S.C. §§ 414 and 423, a person must establish onset during a period he or she is fully insured and has ten quarters of coverage in the forty calendar quarters ending with the calendar quarter in which his or her disability began or in any subsequent calendar quarter. These quarters of coverage may be acquired either on the basis of earnings from employment or self-employment covered under the provisions of Title II of the Act.

4

Utilizing the agency's standard five-step inquiry,[7] the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (R.22,29,59,64). At step-two he found that the plaintiff's medical evidence established certain medical problems which could cause significant vocationally relevant limitations and were "severe" impairments[8] within the meaning of the Act, namely musculoskeletal disorders of the back and exogenous obesity. (R.23,29).

In his December 2002 decision, the ALJ discussed the evidence pertaining both to plaintiff's low back condition and her obesity.[9] It was his conclusion that her impairments neither met nor were medically equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.60-61,64). In particular, he concluded that the plaintiff's impairments (either individually or in combination) neither met nor equaled the criteria of Listing 1.04 (disorders of the spine). (R.60-61).

---

[7] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). It begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled; if not, step-four is a consideration of whether the claimant's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

[8] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[9] As the ALJ noted in his decision, obesity and obesity-related impairments are no longer "listed" impairments, but they remain factors to be considered as part of a disability evaluation. (R.61). *See* SSR 02-1p (issued 09/12/02 superseding SSR 00-3p).

5

In doing so, the ALJ made note of the fact that no treating or examining physician had mentioned findings equivalent to the criteria in any listed impairment, and he further noted that "even if this analysis were to be retroactively applied to the time of the [1999 hearing decision], a similar holding would apply for all periods settled or at issue." (R.60).

Although the ALJ's September 2004 decision contains no separate step-three discussion, it contains a step-three finding consistent with the ALJ's 2002 decision which was, as previously noted, incorporated by reference in the 2004 decision.

After further concluding that plaintiff's statements about her limitations were not fully supported in the medical record, the ALJ found that plaintiff, as of December 31, 2002, retained the exertional ability to perform a limited range of work at a sedentary exertional level[10] with a sit/stand[11] accommodation and ten pound lifting limitation. (R.26-27) (*See also* 593-594,600-601).

In the opinion of the ALJ, these functional limitations would prevent the plaintiff from performing any of her past relevant jobs, including work as a receptionist/secretary, as a counter clerk,

---

[10] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as work requiring the lifting of no more than ten pounds at a time and occasionally carrying articles such as docket files, etc. Although sedentary work is further defined as work where a certain amount of walking and standing is necessary in carrying out job duties, the job is "sedentary" if walking and standing are required occasionally and other sedentary criteria are met. The same regulatory section also provides that sedentary work has the same meaning as in the Dictionary of Occupational Titles (DOT) published by the Department of Labor, which provides that sedentary work requires a capacity to sit for at least six hours in an eight-hour day, to lift up to ten pounds maximum, and the ability to walk and stand up to approximately one-third of the work day (two to three hours per day per eight-hour day). *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir 1984).

[11] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or sit/stand limitation." *See Gibson v. Heckler*, 762 F.2d 1516, 1518(11th Cir. 1985).

Case 5:05-cv-00077-SGW-JGW   Document 14   Filed 06/15/06   Page 6 of 23   Pageid#: 57

or in a grocery store either as a bagger/stocker or as a flower arranger/clerk. (R.27). Relying on vocational testimony, the ALJ determined that the plaintiff could perform the requirements of a number of jobs existing in the national economy, including work as a telemarketer, a cashier and as an order clerk. (R.28).

After the ALJ's issuance of his adverse decision, plaintiff made a timely request for review by the Appeals Council. (R.478-485). This request was subsequently denied (R.11-14), and the ALJ's unfavorable decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III.     Facts

For the most part, the plaintiff's medical records for the period between her alleged disability onset date in May 1997 and the decision denying her initial DIB application in the Fall of 1999 show that she sought medical treatment primarily for recurrent complaints of gastrointestinal distress and low back pain. (R.38-42,196-282,321-331,370-387,409-415,445-447). Given the administrative finality which is attached to the non-disability determination on her initial application, the plaintiff's medical evidence prior to November 8, 1999 is herein summarized principally to provide history and context to the later medical evidence bearing directly on her second DIB application.

*Gastrointestinal and General Medical Care*

The plaintiff's gastrointestinal reflux disease was initially diagnosed in 1995 and found to be associated with a small hiatal hernia without significant gastrointestinal reflux. (R.196). Since then, it has been treated pharmacologically, generally with Prilosec and a muscle relaxer (*e.g.* R.376,200).

7

Emergency room, laboratory and related records from Fauquier Hospital, dated between December 1999 and the Fall of 2004, show a number of diagnostic studies, laboratory tests and symptomatic treatments for a myriad of health-related complaints by the plaintiff, including shortness of breath, wheezing, skin rash, nausea, atypical chest discomfort, difficulty swallowing, knee and ankle pain, low back pain (on two occasions, April 29, 2002 and December 17, 2004), finger sprain, diarrhea, left knee pain and associated burning sensation, right arm pain, elevated HDL cholesterol, pleuritic pain, sore throat, headaches, anxiety, swollen right leg, elevated sugar level, right calf pain, hypertension, gastrointestinal reflux, hair loss, and abdominal cramping/distress. (R.334-368,394-396, 401,404,416-420,422-425,435-436,439-441,448-477,487,489,492-495,500-504,506,509-512).  On the basis of complaints of generalized achiness "all over her body" during the preceding eight to ten years and which was "gradually getting worse," the plaintiff was also comprehensively evaluated by a rheumatologist on October 14, 2004. (R.496-498).

Over essentially the same period of years, the medical records of plaintiff's primary care physician, Dr. Norman Mauroner (Warrenton Medical Associates), and of her gastroenterologist, Dr. Thomas Sherman (Gastroenterology Associates), document essentially the same range of complaints and treatment. (R.308-319,257-263,388-404,405-420, 425-436,442-444,491-495,499-518).

An August 2003 listing of the plaintiff's "multiple medical problems" by her primary care physician's included: diffuse inflammatory arthritis in her arms and shoulders; headaches; degenerative disc disease with chronic low back pain; lethargy; adult onset diabetes; gastroesophageal reflux disease; cardiac arrhythmias; episodic asthmatic bronchitis; history of hypertension; and

obesity. (R.438). Due to these multiple conditions, it was his opinion that the plaintiff was unable to "stand, . . . do any lifting, . . . do fine manipulation, . . . [or] perform in any occupation that require[d] attendance for a protracted amount of time. (*Id*.). This conclusory assessment by Dr. Mauroner, however, suggested no disability onset date and provided no clinical, laboratory, or other diagnostic basis for the opinion. *See* 20 C.F.R. §§404.1527(d)(3)-(e)(3).


### *Orthopaedic Care*

According to her medical records, the plaintiff's complaints of significant low back pain radiating into her left lower extremity began in the Spring of 1997. At that time, she consulted with Dr. David Couk, the first of several orthopaedic specialists. (R.38,215). An MRI revealed a central subligamentous herniated nucleus pulposus ("HNP") at the L5-S1 level, a central and left lateral HNP at the L3-4 level, and a significant bulge at the L4-5 level. (R.38,212-214,445-447; *see also* 204,445). During the following year, the plaintiff's low back pain syndrome was treated with medication and multiple epidural steroid injections. (R.38-39,200-203,205-211,215-216).


In September 1998, she saw a second orthopaedist, Dr. Ian Wattenmaker, with essentially the same complaints. (R.39,218-219). On the basis of his clinical examination and review of the prior year's radiographic studies, Dr. Wattenmaker concluded that surgery would not be appropriate, particularly given the significant transient relief achieved by the use of epidural steroids and given the unpredictable nature of back surgery in the absence of any well-defined radicular pain. (R.39,218-219). He counseled her to lose weight as a way to relieve pressure on her back. A later EMG study,

9

by a neurologist in October 1998, demonstrated no electro physiological evidence of mononeuropathy, polyneuropaty, plexopathy or lumbosacral radiculopathy. (R39,.217).

In March 1999, the plaintiff was seen and examined by Dr. Thomas Schuler, a spinal surgeon. (R.40,251-253). On the basis of his clinical findings (including a finding that the plaintiff demonstrated "hypersensitivity to palpation" and a finding that her weight had increased from 247 to 263 pounds during one three-month period) and on the basis of various diagnostic studies, Dr. Schuler continued to treat the plaintiff conservatively. She was started on, but failed to complete, a physical therapy program; she similarly started, but failed to sustain, a weight loss and diet control program; she was prescribed a limited anti-inflammatory medication regime and a lumbar pad, and she was given several sacroiliac joint injections for episodic pain relief. (R.40,225-231,237-256,275). In the opinion of Dr. Schuler, the plaintiff was capable of light sedentary work where she could change positions as needed, lift no more than twenty to twenty-five pounds intermittently, and lift no more than ten pounds frequently. (R.244).

Following a fourth orthopaedic assessment (R.424) and a repeat MRI (R.422-423) in the Spring of 2002, Dr. Jeffrey Wise at Blue Ridge Orthopaedic Associates reconfirmed the prior clinical diagnosis of degenerative disc disease with lumbar radiculopathy. (R.424). Similarly, he concluded that the plaintiff was not a good surgical candidate and needed to lose weight. (R.424,421). At the time of a follow-up appointment in May 2002, Dr. Wise found no muscle spasm. (R.421). Additionally, the plaintiff demonstrated a full range of motion in her hips and knees, and she reported that her back pain was some better (*Id.*).

10

Dr. Wise did not again see the plaintiff for more than two years. In 2004, when he reviewed a new MRI, he noted that it showed the same degenerative disc disease and, in addition, some narrowing of the spinal canal. (R490). At that time, the plaintiff reported that she was, nevertheless, "feeling better" and did not want to consider epidural steroid treatment. (*Id.*). No return office visit was scheduled.

One year earlier, in July 2003, the plaintiff had sought an evaluation of her low back condition by a fifth orthopaedist, Dr. Robert Squillante at Fredericksburg Orthopaedic Associates. (R.437). On examination, he found her heel, toe and tandem gait to be intact; he found no motor or sensory deficit in either lower extremity, and he found her "[h]ip and knee range of motion [to be] well preserved." (*Id.*). After reviewing the previous lumbar MRI, he reconfirmed the degenerative lumbar disc disease diagnosis. (*Id.*). After discussing "treatment options" with the plaintiff, he offered to see her in the future "as needed." (*Id.*).

*Consultive Examination and Physical Capacities Assessment*

After filing her second DIB application, a consultive examination was performed by Dr. Michael Ackerman. (R.283-291). During this examination in December 2000, no muscular wasting or rigidity was found; normal cervical range of motion was demonstrated, and normal range of motion was demonstrated in her extremities. (R.285,289-291). She did, however, demonstrate some limitation of flexion in the lower spine, and some limitation of motion in both hips due to pain. (R.285-286,289-290). No neurological deficits were found, and the plaintiff's recorded weight at that time was 250 pounds. (R.285-286).

11

Two assessments of physical capacity were thereafter completed by state agency physicians. (R.292-299,300-307). Based on their separate reviews of the medical records, each concluded that the plaintiff's subjective complaints of back pain were "partially credible." (R.294,302). In the opinion of each, the plaintiff retained an exertional ability to lift twenty pounds occasionally, to lift ten pounds frequently, to stand or walk about six hours during a normal work day, and to sit approximately six hours during a normal work day. (R.293,301). In addition, each concluded that the plaintiff had postural limitations which permitted only occasional climbing, bending, stooping, kneeling, crouching or crawling. (R.294,302).

In compliance with his regulatory obligations, these opinions and conclusions concerning the plaintiff's impairments and her residual functional abilities were considered by the ALJ as part of the decision-making process. *See* 20 C.F.R. § 404.1527(f).

### *Hearing Testimony*

At the administrative hearing in August 2004, the plaintiff testified that she was then thirty-five years of age.[12] (R.559). She testified that she has a high school education and had previously worked as a receptionist/secretary, as a dispatcher, as a counter clerk, as a grocery store stocker/bagger, and as a flower arranger/clerk. (R.560-563,582). *See* 20 C.F.R. §§ 404.1564, 416.964. Since injuring her back in 1997, she has been able to tolerate "pretty much nothing" in the way of activity, and she has spent her days "pretty much just sitting around, or laying around."

---

[12] At this age the plaintiff is classified as a "younger worker" under 20 C.F.R. § 1563(a).

(R.565,566). She testified that her chronic low back and radicular pain has gotten worse over the years, that she gets some limited relief with medication and by using a recliner, that she also gets some relief by laying-down, that she misses the ability to work, and that she cannot drive regularly or even fix a traditional meal for her husband because of constant severe pain. (R.567-569,572-573, 576). She testified that she lives "in pain every day of [her] life" and would consider back surgery, if it was recommended. (R.577). In addition, she stated that she has multiple additional health problems, including arthritis pain that "travels all over her body," diabetes, episodic chest pain, polycystic ovaries, diarrhea "all the time," colitis, irritable bowel syndrome, "and just so many things." (*Id.*).

The plaintiff's husband, Steven Hill, also testified. He said that his wife was active and regularly employed until her back problems began in May 1997. (R.578-579). Since then, however, "she's mainly just stayed at the house." (R.579-580). In his opinion, his wife would work, if she could, and is frustrated by the chronic pain that prevents her from doing so. (R,579,581).

Earl Glosser, a vocational expert, was also present and testified at the administrative hearing. (R.553,582-583,600-601). In terms of exertion and skill levels, Dr. Glosser described plaintiff's vocationally relevant past work as a receptionist/secretary to be sedentary and semiskilled, her work as a counter clerk to be light and either unskilled or semiskilled, her work as a grocery store bagger/stocker to be medium and unskilled, and her work in the store's flower department to be medium and semiskilled. (R.582-583).

13

Asked to identify work activity that could be done by a hypothetical individual of plaintiff's age and education, with the same vocationally relevant work experience, limited to sedentary work with a sit/stand option[13] and a ten pound lifting limitation, Dr. Glosser testified that such an individual could perform a number of entry level, sedentary jobs in the national economy, including work as a receptionist, secretary, accounting clerk, telemarketer, cashier, dispatcher, information clerk, or order clerk. (R.593-594,600-601). Asked to assume further that such an individual was functionally limited to the degree described by the plaintiff and her husband, Dr. Glosser testified that such an individual, with that degree of debilitating pain, would not be able to perform any job that existed in significant numbers in the national economy on a regular and sustained basis. (R.600).

## IV.    Analysis

The plaintiff argues in her appeal that the ALJ's adverse step-five determination was predicated on an erroneous discounting of her testimony, on a failure to consider adequately the medical evidence of her significant disc disease and debilitating back pain, and on vocational testimony given in response to a hypothetical question that failed to include all of her functional limitations.

As stated above, the court's function in this case is limited. It must determine whether the record contains substantial evidence to support the ALJ's contested findings. In doing so, the court must be mindful that it lacks the authority to substitute its judgment for that of the Commissioner, provided the decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456

---

[13] See footnote 11.

14

(4th Cir. 1990). In making this substantial evidence determination, the court must also consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and his rationale for crediting certain evidence. *See Sterling v. Smokeless Coal. Co., v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

It is the responsibility of the ALJ to weigh the evidence, including the medical record, and to resolve any conflicts. While he may not reject relevant evidence for no reason or for the wrong reason, under the regulations an ALJ may assign little or no weight to evidence, including a treating source medical opinion, based on the factors set forth in 20 C.F.R. §§ 404.1527, 404.1529, 404.1530, provided he explains his rationale and the record supports his findings.

### A.    ALJ's Discount of Plaintiff's Testimony

Central to the plaintiff's claim of administrative error is a reliance of her own testimony concerning the persistence and increasing intensity of her low back pain and associated radiculopathy. This condition and its consequential limitations on her ability to function are fully consistent, she contends, with a significant, and well-documented, lumbar disc condition[14] which includes, *inter alia*, multiple herniated discs and a narrowing of the spinal canal in at least one location.

---

[14] In part, plaintiff's argument relies on two established regulatory principals. An ALJ may not reject a plaintiff's statements about the intensity of his or her subjective symptoms, such as pain, "solely because objective medical evidence does not substantiate [his or her] statements" and the principle that no objective evidence of the symptom is required; provided objective evidence exists of a medically determinable impairment which could be reasonably expected to produce the symptom. *See* 20 C.F.R. §§ 404.1529(a)-(b) and (c)(2), 416.929 (a)-(b) and (c)(2). *See also, Foster v. Heckler,* 780 F.2d 1125 (4th Cir. 1986).

Her testimony concerning the presence of a debilitating pain syndrome in association with a medical condition that can be reasonably expected to produce pain does not, however, conclusively establish disability under the Act. See SSR 96-7p. The ALJ is obligated to evaluate her statements concerning the intensity of her pain and its effect on her functional capacity on the basis of the entire record, including the objective medical evidence, *Id. See generally Hatcher v. Secretary, HHS*, 898 F.2$^d$ 21, 23 (4th Cir. 1989) (credibility determinations are to be made by the ALJ); *Shively v. Heckler*, 739 F.2$^d$ 987, 989-90 (4th Cir. 1984) (an ALJ is not required to accept subjective testimony at face value).

As part of her contention that the ALJ improperly discounted her testimony, the plaintiff also argues that the discount of her testimony was based solely on the September 6, 2000 office record of her gastroenterologist, Dr. Sherman, in which he noted that she "present[ed] with total resolution of her prior complaints" (*See* R.408). This statement, she argues, is a reference only to the gastrointestinal chest pain that she had been experiencing at the time, that Dr. Sherman's treatment was limited to her gastrointestinal complaints, and that the ALJ took the statement "out of context." The ALJ's decision, however, presents a far more detailed and persuasive basis for his finding that the plaintiff's pain complaints were somewhat exaggerated. (*See* R.24-27).

In compliance with his adjudicative obligation, the ALJ considered the plaintiff's treatment and examination records. (R.23-24). He reviewed the various clinical and diagnostic findings, and he considered the treating and examining source opinions. (*Id.*). On review, these records simply

Case 5:05-cv-00077-SGW-JGW   Document 14   Filed 06/15/06   Page 16 of 23   Pageid#: 67

failed to support the plaintiff's unequivocal testimony that her back pain and associated lower extremity radiculopathy had become progressively worse over time.

For example, in the Fall of 1998 she told Dr. Wattenmaker that the epidural steroid injections had given her significant transient relief. (R.218-219). Neurological testing, in 1998 and again in December 2000, failed to demonstrate any objective basis for her claim of lumbosacral pain radiating into either of her lower extremities. (R.217,285-286). Similarly, in 1999 Dr. Schuler noted that the plaintiff reacted with "hypersensitivity to palpitation," that she reported transient pain relief from sacroiliac joint injections, and that she was then physically capable of sedentary work. (R.244,246,248).

Even if one accepts *arguendo* that her statement to the gastroenterologist in September 2000 was never intended to imply a full resolution of her back pain, the findings of Dr. Ackerman three months later suggest that her condition was, at that time, significantly less than totally disabling due to chronic and unremitting pain. On examination, Dr. Ackerman found no muscular atrophy, no spasm, no weakness, and only some limitation of motion in her hips. (R.289-291). Similarly, when seen by Dr. Wise for an orthopaedic examination in the Spring of 2002, the plaintiff reported that her pain was better, and on examination she demonstrated no muscle spasm and full range-of-motion in her hips. (R.421).

The plaintiff's claim of unremitting and increasingly debilitating pain was similarly not fully supported by Dr. Squillante's finding on examination in 2003, *Inter alia,* he found no motor or

sensory deficits in either lower extremity, and he found her hip and knee range of motion to be "well-preserved." (R.437). Likewise, her testimony was not consistent either with Dr. Sherman's April 2004 office note that she "d[id] not appear to be in any discomfort" (R.442) or with her statements to Dr. Wise in December 2004 that she was "doing much better" and did not want to consider any injection therapy (R.490).

The agency's regulations give the Commissioner latitude in resolving inconsistencies in evidence. *See* 20 C.F.R. §§ 404.1527 and 416.927. *See also, Estep v. Richardson*, 459 F.2$^d$ 1015, 1017 (4th Cir. 1972). Consistent with this responsibility, the ALJ's resolved the inconsistency between the objective medical record and the plaintiff's testimony that she suffers from an unremitting and debilitating pain syndrome. As demonstrated, the finding of "partial credibility" was appropriately clear, specific and supported by substantial evidence.

## B. *ALJ's Failure to Consider Medical Evidence*

As her second grounds for reversal, the plaintiff contends generally that the ALJ failed to consider her medical evidence of debilitating lumbar disc disease. She argues that the ALJ's finding that she retains the ability to perform a limited range of sedentary work was necessarily based on a "fail[ure] to acknowledge the significance" of her "multi-level disc abnormalities," on a failure to recognize "the severity and debilitating nature of her [back] complaints" which had been reported by "all" treating sources, on a failure to recognize that her spinal condition would be expected to cause significant pain,[15] and on a failure to credit her "honest and accurate testimony."

_____

[15] See preceding footnote.

18

In response, the Commissioner argues that the plaintiff's residual functional capacity was correctly evaluated and points-out that her last-insured date under Title II of the Act was December 31, 2002. Thus, in order to be eligible for disability insurance benefits, the plaintiff must demonstrate that she was disabled by that date. *Johnson v. Barnhart,* 434 F.3d 650, 656(4th Cir. 2005) (citing 42 U.S.C. § 423 (a)(1)(A), (c)(1)(B) and 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner's decision in this case reflects the ALJ's consideration of the entire medical record, including a multi-year history of conservative orthopaedic care, episodic steroid injections, limited pain medication regimes, and a failure on the plaintiff's part to follow some treatment recommendations. Similarly, it contains multiple entries which suggest that the plaintiff's condition was not totally disabling, including clinical findings that she exhibited a normal gait, a generally normal range of motion, no loss of strength, no muscle atrophy, no motor or sensory deficit in either lower extremity, no neurologic evidence of lumbosacral radiculopathy, and some indications of symptom magnification. Additionally, during the relevant time period, the administrative record also contains the work-capable functional assessments by one treating and two state agency physicians.

After considering and evaluating all of this evidence (R.23-24,59-60), the ALJ found that the plaintiff had an objectively identifiable, medically determinable impairment that could be reasonably expected to produce pain. (R.24-25,59-63). Contrary to the plaintiff's assertion, however, the medical record contains no opinion or suggestion by an orthopaedic specialist that the plaintiff's back

19

condition is either totally debilitating or one that rendered her unable to perform any kind of work activity on a regular and sustained basis prior to the expiration of her insured status.

Thus, on review the record fails to support the plaintiff's contention that the ALJ's consideration of her medical evidence was flawed and resulted in an overstatement of her residual functional capacity. His conclusion that during the relevant eligibility period the plaintiff possessed the functional ability to engage in a limited range of sedentary work activity is fully supported by substantial evidence.

### C.   ALJ's Reliance on Invalid Vocational Testimony

As her third appeal contention, the plaintiff argues that the ALJ relied on vocational testimony given in response to a hypothetical question which failed to reflect accurately her medical condition as established "by the record as a whole." For this same basic reason outlined in the preceding two analytical sections of this report and recommendation, the plaintiff's challenge to the ALJ's hypothetical question also fails.

Without question, the opinion of a vocational expert is not helpful at step-five of the agency's decisional process unless it is given "in response to proper hypothetical questions which *fairly* set out all of [a plaintiff's ] impairments." *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir.1989) (emphasis added). In contrast, a hypothetical question is unimpeachable if it *"adequately reflect[s] "* a residual functional capacity for which the ALJ had sufficient evidence. *See Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir.2005) (emphasis added).

Here the ALJ directed the vocational witness to assume a hypothetical individual with the plaintiff's vocational profile and with functional limitations which restricted her to sedentary work with a sit/stand option and with a ten pound lifting limitation. These physical limitations were at least equal to those described by medical sources, particularly during the relevant insured period, and they were consistent with the credibility and medical findings outlined herein above. In short, the ALJ's hypothetical question met the test required by the *Walker* and *Johnson* decisions. It *fairly* set forth the plaintiff's functional impairments, and it *adequately reflected* her residual functional capacity at all times relevant to the decision. The vocational testimony about which the plaintiff complains was, therefore, a proper basis for the ALJ's conclusion that there existed a limited range of sedentary work which the plaintiff could be expected to perform and that she was not "disabled" within the meaning of the Social Security Act.

## V.    Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1.    Plaintiff's claim that the ALJ failed to consider properly the medical evidence is not supported by the administrative record;

2.    The hypothetical question posed by the ALJ to the vocational witness adequately reflects a residual functional capacity for which the ALJ had sufficient evidence;

3.    Plaintiff's claim that the ALJ relied on vocational testimony given in response to an incomplete hypothetical question is not supported by the administrative record;

4.    The ALJ acted within his decisional authority to discount plaintiff's statements concerning the degree to which she was exertionally impaired because of persistent low back pain;

21

5.   Substantial medical and activity evidence exists to support the ALJ's finding that plaintiff's evidence regarding the severity of her symptoms and functional limitations was not entirely credible;

6.   The ALJ's credibility findings are sufficiently specific to make clear to the individual and to any subsequent reviewers the weight given to the plaintiff's statements and the reasons for that weight;

7.   The ALJ adequately considered all of the evidence in this case, including plaintiff's testimony and treating source medical opinions;

8.   Substantial evidence exists to support the ALJ's finding that plaintiff is not disabled within the meaning of the Social Security Act;

9.   Substantial evidence exists to support the ALJ's finding that plaintiff retains the residual function capacity to perform a limited range of sedentary work;

10.  The plaintiff has not met her burden of proving disability; and

11.  The final decision of the Commissioner is supported by substantial evidence and should be affirmed.

## VI.    Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order enter DENYING the plaintiff's motion for summary judgment, GRANTING the defendant's motion for summary judgment, and DISMISSING this case from the docket WITH PREJUDICE to the plaintiff.

The clerk is directed to transmit the record in this case immediately to the presiding United States District Judge.

## VII.   Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within

ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

The clerk is directed to transmit copy of this Report and Recommendation to all counsel of record.

DATED: 15th day of June 2006.

United States Magistrate Judge